# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 22 2015, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Bruce N. Elliott
Grant County Public Defender's Office
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of: | October 22, 2015 |
| H.S., Mad.S. & Mal.S. (Minor Children), | Court of Appeals Case No. 27A03-1503-JT-77 |
| and | Appeal from the Grant Superior Court |
| K.S. (Mother), | The Honorable Dana J. Kenworthy, Judge |
| *Appellant-Respondent,* | Trial Court Cause Nos. 27D02-1404-JT-11 27D02-1406-JT-12 27D02-1406-JT-13 |
| v. | |
| The Indiana Department of Child Services, | |
| *Appellee-Petitioner* | |

**Baker, Judge.**

[1] K.S. (Mother) appeals the juvenile court's order terminating the parent-child relationship between Mother and three of her children. Mother contends that the evidence is insufficient to support the termination order. Finding the evidence sufficient, we affirm.

## Facts

[2] H.S. was born in 2009 to Mother and J.S.[1] H.S. was born blind and has multiple disabilities, including a chromosomal defect, cerebral palsy, and severe white matter brain loss. He requires tube feeding every three hours and is immobile and completely dependent on others for his care and well-being. On August 3, 2012, the Department of Child Services (DCS) conducted a home visit to investigate a report of abuse and neglect. DCS observed the following conditions:

- The entire residence was infested with cockroaches.
- H.S. had flies and cockroaches on his body and in his crib.
- A subsequent medical examination revealed maggots around H.S.'s genitals and rectal area, as well as multiple infected insect bites over his body.
- Mother's boyfriend, J.H., was living in the home and was a registered sex offender.

---

[1] J.S. consented to the termination of his parental rights and is not participating in this appeal.

DCS removed H.S. and his siblings[2] and, on August 7, 2012, filed a petition alleging that the children were children in need of services (CHINS). Following their removal, H.S. and two of his siblings required hospitalization. On September 27, 2012, following a factfinding hearing, the juvenile court adjudicated H.S. to be a CHINS.

[3] As a result of the conditions of the home and children, Mother and J.H. were each charged with five counts of class C felony neglect of a dependent. J.H. was found guilty as charged and was adjudged to be a habitual offender. He was sentenced to twenty years imprisonment, to be served consecutively to sentences in other criminal proceedings. His earliest possible release date is May 2024. Mother eventually pleaded guilty to all five counts and received an eight-year sentence, with six years to be served on home detention and two years suspended to probation.

[4] On January 23, 2013, Mother gave birth to twins Mad.S. and Mal.S. J.H. was the father of the twins.[3] On January 28, 2013, DCS removed the twins from Mother's care and filed a petition alleging that Mad.S. and Mal.S. were CHINS based upon the conditions of the home and children at the time of H.S.'s

---

[2] Mother has a total of seven children, three of whom are part of this appeal. A CHINS petition was filed as to Mother's four other children as well. They are not a part of this appeal and the record is unclear as to whether Mother's parental rights were terminated with respect to her other four children.

[3] J.H.'s parental rights were terminated, but he is not participating in this appeal.

removal. On March 14, 2013, the juvenile court found the children to be CHINS following a factfinding hearing.

[5] Following H.S.'s CHINS adjudication, Mother began working with a homebased case management service provider. This provider testified that, while Mother was compliant in keeping the home clean in the beginning of their work together, the condition of the home seemed to get progressively worse as more time passed. Mother also regressed in her parenting skills, becoming easily frustrated with the children. Mother has never been employed, and her sole source of income is Social Security income and food stamps.

[6] In addition to homebased case management, Mother began attending individual counseling. Her counselor testified that Mother's attendance was sporadic. When Mother did attend, she either admitted that she became overwhelmed and depressed and was unable to parent appropriately or she blamed everyone else for her struggles.

[7] On September 9, 2013, Mal.S. and Mad.S. were returned to Mother's care for a trial home visit. Mother's counselor testified that before this time, Mother had been making some progress in counseling, but when the twins were placed back in her care, she began "going backwards" and began missing more appointments. Tr. p. 60.

[8] On November 24, 2013, a home detention employee went to Mother's residence because of an alert from the electronic monitoring equipment. The condition of the home was "deplorable" at that time: the home was very

cluttered, there were cigarette butts on the carpet, the kitchen was full of dirty dishes and large trash bags, there were cockroaches all over the walls, countertops, and on dishes, and there was a "pile of dirt" inside Mother's home detention tracker. *Id.* at 95-96. A police officer was also present and found Mal.S. in his crib and crying. The ten-month-old had a hot forehead, a red face, and swollen eyes. The crib mattress was only four to six inches from the top railing of the crib and the officer was concerned that the infant would fall out.

[9] As a result of the conditions of Mother's home, on November 26, 2013, a notice of violation of home detention was filed and an arrest warrant was issued. DCS removed the twins from her care and custody on November 27, 2013. On December 20, 2013, Mother's home detention was revoked and she was ordered to serve the balance of her home detention, leaving an earliest possible release date (at the time of the termination hearing) of March 2016. All three children are placed in the same preadoptive foster home. The children are doing well and H.S. has been receiving proper medical care.

[10] On April 9, 2014, DCS filed a petition to terminate the parent-child relationship between Mother and H.S., Mad.S., and Mal.S. The juvenile court held a termination hearing on December 8, 10, and 12, 2014, and on February 2, 2015, the juvenile court issued an order terminating Mother's parental rights. Mother now appeals.

# Discussion and Decision

## I. Standard of Review

[11] Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[12] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

    (A)    that one (1) of the following is true:

        (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

      (ii)     A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

      (iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)    that one (1) of the following is true:

      (i)      There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

      (ii)     There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

      (iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)    that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

## II. Conditions Resulting in Removal and Children's Well-Being

[13]     Mother's sole argument on appeal is that the evidence is insufficient to support the juvenile court's conclusions that there is a reasonable probability that (1) the conditions that resulted in the children's removal will not be remedied, and (2) the continuation of the parent-child relationship poses a threat to the children's well-being. When determining whether the conditions that led to a child's removal will not be remedied, the juvenile court must judge a parent's fitness to care for her child at the time of the termination hearing, but must also evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 94 (Ind. Ct. App. 2014). With respect to consideration of the child's well-being, termination is proper when the evidence establishes that the emotional and physical development of the child is threatened. *Id.*

[14]     In this case, the evidence establishes that the reason the children were initially removed from Mother's care and custody was the deplorable condition of the home and the horrifying condition of H.S. and his siblings. Specifically, the home was infested with cockroaches, flies, and other insects. The children were covered with flies and cockroaches, and H.S.'s genitals and rectal area were infested with maggots. These conditions eventually led to Mother's convictions for five counts of felony child neglect. H.S., who suffers from multiple severe

medical conditions and was not cared for appropriately when living with Mother, has never been returned to her care and custody.

[15] Mother received a generous sentence from the trial court for her convictions; while she faced an eight-year sentence, six of those years were to be served on home detention and two were to be served on probation. Several months into her home detention sentence, she was given a chance at having the twins placed back in her care. Whatever progress she had made in the interim quickly dissipated, however, and at the end of November 2013, the children were again removed from her care and her home detention was revoked. Mother faced these consequences because her home was again in deplorable condition. A police officer responding to her home observed that one of the twins was in an unsafe crib with swollen eyes and a red face. After being removed from Mother's care for a second time, the twins showed signs of sensory trauma, including rocking back and forth and banging their heads—behaviors they did not exhibit before being returned to Mother's care. Therefore, despite being given a chance by both the criminal justice system and the juvenile court, Mother was unable to remedy the conditions that originally led to the removal of the children.

[16] The record also reveals that during this time, while Mother was participating with homebased case management and individual counseling, she made little progress. Furthermore, she quickly regressed to her old habits once the twins were returned to her care.

[17] We find that this evidence readily supports the juvenile court's conclusion that there is a reasonable probability that the conditions resulting in the removal of the children will not be remedied. Indeed, the record reveals that although Mother was given nearly a year to solve her problems and a second chance at having the twins placed with her, she ended up in precisely the same place—having the children removed because of the deplorable condition of her home and the poor condition of the children.

[18] The statute is phrased in the disjunctive, such that DCS need not prove both that the conditions resulting in the children's removal will not be remedied and that there is a reasonable probability that continuation of the parent-child relationship poses a threat to the children's well-being. Given that we have found that DCS proved the former, we need not consider whether it also proved the latter. We note briefly, however, that the same evidence supporting our conclusion regarding the conditions resulting in the children's removal likewise supports the juvenile court's conclusion that a continuation of the parent-child relationship poses a threat to the well-being of these children. Mother's arguments to the contrary amount to a request that we reweigh the evidence and reassess witness credibility—a request we decline.

[19] The judgment of the juvenile court is affirmed.

Bailey, J., and Mathias, J., concur.